Jared S. Dahle
Elijah L. Inabnit
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
jsdahle@garlington.com
elinabnit@garlington.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BERLETH,<br><br>Defendant. | Cause No.<br><br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff American Bankers Insurance Company of Florida ("American Bankers"), by and through its attorneys, Garlington, Lohn & Robinson, PLLP, for its Complaint for Declaratory Judgment, states and alleges as follows:

1.   American Bankers is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in

Atlanta, Georgia.  American Bankers is an insurance company which is authorized to, and does, transact business in the State of Montana.

2. Defendant Robert Berleth is a resident of Houston, Texas, and a citizen of the State of Texas.

3. American Bankers issued to Berleth a renter's policy, Policy No. RIN 6458723 ("Policy"), effective May 1, 2018 to May 1, 2019, with a personal liability policy limit of $100,000 per occurrence as set forth in the Declarations Page.  A true and accurate copy of the Declarations Page and Policy are included herewith as Exhibit A.

4. Suit has been initiated against Berleth by way of a Complaint and Demand for Jury Trial ("Underlying Complaint"), dated and filed on September 25, 2018, entitled *William E. Rideg v. Robert Berleth*, Missoula County District Court, Cause No. DV-18-1317 ("underlying action").  A true and accurate copy of the Complaint and all attachments is included herewith as Exhibit B.

5. Berleth tendered to American Bankers the defense and indemnification of the Underlying Complaint.  Pursuant to a reservation of rights, American Bankers has maintained that it owes no duty to defend or indemnify Berleth from the allegations set forth in the Underlying Complaint.

6. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332(a) on the basis of diversity of citizenship between the parties and because the amount in

controversy exceeds the jurisdiction minimum of $75,000, exclusive of interest and costs.

7. The amount in controversy of this declaratory judgment action is measured by the value of the object of the litigation. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347–48 (1977).

8. This Court has subject matter jurisdiction in that the value of the object of this litigation in the form of the claim for defense and indemnification of the claims against Berleth in the underlying action, assuming liability is established, has a monetary equivalent in excess of the $75,000 jurisdictional threshold.

9. The amount in controversy includes both the attorney's fees that will be incurred in defending the claims against Berleth, together with any claimed obligation to indemnify him.

10. A reasonable reading of the value of the rights being litigated leads to the conclusion that the jurisdictional threshold is met for purposes of this Court's subject matter jurisdiction.

11. This Court has subject matter jurisdiction in that it is not a legal certainty that the claim involves less than the jurisdictional amount.

12. A real case or controversy exists between the parties as to whether

American Bankers has any duty to defend or indemnify Berleth in the underlying action.

13. The gravamen of the claims alleged in the Underlying Complaint involve Berleth's alleged intentional acts of spreading and publishing false statements concerning Plaintiff William E. Rideg ("Underlying Plaintiff"), who was Berleth's landlord, with the intent of defaming him and damaging his profession. The Underlying Complaint further alleges that Berleth repeated his slanderous and libelous statements in an eviction proceeding arising out of the dispute with his landlord, thus perjuring himself.

14. In pertinent part, the Underlying Complaint includes the following:

### FIRST CAUSE OF ACTION
### DEFAMATORY SLANDER PER SE, § 27-1-803 MCA

. . .

21. In July, 2018, Mr. Berleth began regularly confiding in Mr. M. Rideg, his next-door neighbor, about a growing dislike of his landlord, the above-named Plaintiff [William E. Rideg]. Mr. Berleth's disparaging comments, reflected herein, were published both in person and over the phone to Mr. M. Rideg.

22. These knowingly false and unprivileged publications made to Mr. M. Rideg by Mr. Berleth, were understood to concern Plaintiff.

23. These statements are slanderous, and made in an effort to injure Plaintiff in respect to his profession, trade, or business, by imputing general disqualifications which have a natural tendency to lessen profit in his profession. These statements likewise have, and will, cause shame, mortification, injured feelings and mental suffering to

Plaintiff.

24.    Mr. Berleth restated several of these slanderous statements when he perjured himself during proceedings related to Cause No. DV 18-1186 on September 19, 2018.

## SECOND CAUSE OF ACTION
## DEFAMATORY LIBEL PER SE, § 27-1-802 MCA

. . .

26.    In July, 2018, Mr. Berleth published false and unprivileged text statements, reflected herein, to Mr. M. Rideg in an effort to portray Plaintiff as untruthful; one who stalks tenants by photographing them through windows; one who enters others' homes without permission; and one who accuses the tenants and their dogs of destroying property.

27.    These statements are libelous, made with knowing falsity in an effort to expose Plaintiff to hatred, contempt, ridicule, or obloquy and to cause Plaintiff to be shunned and avoided, as well as causing Plaintiff to be injured in his occupation.

28.    Mr. Berleth restated many of these libelous statements when he perjured himself during proceedings related to Cause No. DV 18-1186 on September 19, 2018.

29.    As a proximate result of the above described defamatory slanderous and libelous publications, Plaintiff has and will suffer injury in respect to his profession, trade, or business, and be exposed to hatred, contempt, ridicule, or obloquy, causing Plaintiff to be shunned, avoided and suffer from shame and mortification.

### [PRAYER FOR RELIEF]

WHEREFORE, Plaintiff demands judgment against Defendant for:

1.  General damages;

    2. Punitive damages;

    3. Costs of suit;

    4. Reasonable attorney fees, if permitted by law;

    5. Such other relief that this Court may deem just.

Ex. B at 5-7.

    15. American Bankers contracts in the insuring agreement of the Policy with the following granting language:

### SECTION II – LIABILITY COVERAGES

**COVERAGE E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

    1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

    2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

Ex. A at 19-20.

    16. The term "occurrence" is defined by the Policy at page 12 as follows:

      6.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

          a.    "Bodily injury"; or
          b.    "Property damage".

Ex. A at 12.

17.    The Policy only provides coverage for an "occurrence" meaning an accident resulting in "bodily injury" or "property damage" as those terms are defined by the Policy.  While the term "accident" is not defined in the Policy, the term "accident" from the standpoint of the insured reasonably refers to any unexpected happening that occurs without intention or design on the part of the insured.

19.    The Underlying Complaint contains no allegations of an accident to which coverage could apply to the claims for defamatory slander or defamatory libel because both claims are premised upon solely intentional conduct.

18.    Defamation is an intentional tort which is effected by either slander or libel and requires the propagation of a false and unprivileged publication about another that causes that person to suffer damages.  The very essence of defamation by either slander or libel precludes the conclusion that it can occur accidentally.

24.    Additionally, the claims of defamatory slander and defamatory libel in

the Underlying Complaint are not covered by the Policy because they allege no facts to show that any "bodily injury" occurred.

25. "Bodily injury" is defined by the Policy as "bodily harm, sickness or disease, including required care, loss of services and death that results." Ex. A at 12.

26. Neither of the defamation claims in the Underlying Complaint allege events that would constitute an "occurrence" because they do not allege any accident that resulted in "bodily injury."

27. Additionally, no coverage exists for the punitive damages claim because it does not constitute an "occurrence" since any such damages cannot be said to have been the result of "bodily injury" or "property damage" that was caused by an accident.

28. Moreover, the Policy provides the following exclusion that applies to preclude coverage:

**SECTION II – EXCLUSIONS**

**1. Coverage E – Personal Liability** . . . [does] not apply to "bodily injury" or "property damage":

    a.    Which is expected or intended by an "insured"; even if the resulting "bodily injury" or "property damage" is of a different kind, degree or quality than initially expected or intended; or is sustained by a different person, entity, real or personal property.

Ex. A at 20.

29. The allegations in the Underlying Complaint rest entirely upon intentional conduct undertaken by the insured to cause intended injury and damage. As a result, this exclusion also operates to preclude coverage under the terms of the Policy.

### PRAYER FOR RELIEF

WHEREFORE, having made its claim for declaratory relief, American Bankers prays:

1. That the Court ascertain, determine, and declare that no coverage exists under the Policy for any and all claims against Berleth as set forth in the Underlying Complaint against him in the underlying action;

2. American Bankers has no duty to defend or indemnify Berleth under the Policy against the allegations set forth in the Underlying Complaint in the underlying action, as a matter of law; and

3. That the Court grant such other and further relief as the Court deems just and proper.

DATED this 26th day of July, 2021.

/s/ Elijah L. Inabnit
Attorneys for Plaintiff